UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LISA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV338 JCH |
| | ) | |
| AETNA LIFE INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendants Aetna Life Insurance Company ("Aetna") and Boeing Company Employee Health and Welfare Benefit Plan (Plan 503) (the "Plan") for Summary Judgment, filed January 13, 2016. (ECF No. 43). The motion is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Lisa Jones was employed by The Boeing Company ("Boeing") as a business and planning analyst, which required sedentary level duties. (Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 1). At all times relevant hereto, Plaintiff was covered under Boeing's employee welfare benefit plan, which offered short-term disability ("STD") benefits. (*Id.*, ¶ 2).[1] Aetna was the claims administrator for the Plan, and as such possessed discretionary authority to make benefit determinations thereunder. (*Id.*, ¶¶ 2, 4, citing Plan, attached to Defendants' Motion for Summary Judgment as Exhibit 2, at 22, 27, 94, 95,

---

[1] The Plan was an employee welfare benefit plan, governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq. (Defendants' Facts, ¶ 6).

- 1 -

104).[1] STD benefits under the Plan were self-funded, however, meaning they were funded solely by Boeing and not by Aetna or an insurance policy. (Defendants' Facts, ¶ 5, citing Plan 95).

The Plan defined "disability" for purposes of STD benefits as follows:

> You become disabled as a result of accidental injury, illness, or a pregnancy-related condition and your accidental injury, illness, or pregnancy-related condition prevents you from performing the material duties of your own occupation or other appropriate work the Company makes available.
>
> \*   You continue under the care of a physician throughout your disability. You also may be required to be examined by a physician chosen by the service representative as often as reasonably necessary to verify your disability.
>
> \*   You are earning 80 percent or less of your indexed predisability earnings.

(Plan 100).

Plaintiff stopped working on October 16, 2013, at the age of 43, and submitted a claim for STD benefits to Aetna. (Defendant's Facts, ¶ 7, citing Administrative Record ("AR"), attached to Defendants' Motion for Summary Judgment as Exhibit 1, at 3, 5, 381-383). On October 21, 2013, rheumatologist Dr. Francisco Garriga submitted an Attending Physician Statement, in which he noted that Plaintiff's primary diagnosis was ankylosing spondylitis, and her secondary diagnosis was migraine headaches. (AR 381-383). Dr. Garriga indicated Plaintiff's symptoms were pain, stiffness and fatigue, together with objective findings of elevated C-reactive protein ("CRP") and fused SI joints. (Defendants' Facts, ¶ 8, citing AR 381-383). Confusingly, Dr. Garriga appeared to say both that Plaintiff was unable to work from October

---

[1] In her response to Defendants' Facts, Plaintiff questions whether the documents attached to Defendants' motion represent the Plan applicable to Plaintiff, and further whether any conflicts exist between the Summary Plan Description ("SPD") and the Plan itself, which Plaintiff claims not to have received. (Plaintiff's Response to Defendants' Facts, ¶ 3). Defendants counter that the affidavit supplied by Ms. Debra Comar, Aetna's Claim Operations Senior Director, confirms the applicability of the documents, and further note they have attached both the SPD and the underlying Plan to their motion. (Reply in Support of Defendants' Motion for Summary Judgment, PP. 2-3).

17, 2013, through November 3, 2013, and also that she was capable of performing light work activity eight hours per day, five days a week. (AR 381, 382).

Nurse case manager Holly Shepler, RN, reviewed the medical documentation and found Dr. Garriga's recommendation appropriate to stabilize Plaintiff's pain and allow her to return to work. (Defendants' Facts, ¶ 9, citing AR 13-14). Nurse Shepler further noted that if Plaintiff failed to return to work on November 4, 2013, Aetna should "monitor exams for increased functional capacity and reduced pain." (AR 14).

In a letter dated October 23, 2013, Aetna approved Plaintiff's claim for STD benefits, effective October 24, 2013 through November 3, 2013. (AR 94).[2] The letter advised Plaintiff that if she were unable to return to work on November 4, she should have her physician submit additional medical information detailing how her disability continued to affect her work capacity. (AR 95). Aetna's letter further informed Plaintiff that it may need to request her "updated medical chart notes and/or an independent medical evaluation for review and determination for further benefits." (*Id.*).

In a letter dated November 1, 2013, Dr. Garriga informed Aetna that Plaintiff's disability leave had been extended until November 24, 2013, due to an intervening hospitalization. (AR 384). Aetna approved the extension of STD benefits through that date in a letter dated November 5, 2013, and later approved an extension through December 7, 2013. (AR 99, 105). In a letter dated December 2, 2013, Dr. Garriga requested that Plaintiff's leave be extended to March 8, 2014, due to a lack of improvement in her condition. (AR 377). Nurse Shepler reviewed Plaintiff's case on December 4, 2013, and recommended certifying Plaintiff's leave only through January 31, noting that "[r]ecords will be requested in early January to determine

---

[2] Plaintiff's STD benefits began after the Plan's 7-day elimination period. (Defendants' Facts, ¶ 10, citing Plan 22).

severity of functional deficits and if AP duration may be appropriate." (AR 23). Dr. Garriga submitted updated treatment notes to Aetna in January, 2014, indicating that Plaintiff was disabled through February 28, 2014, due to debilitating migraines, fatigue and joint pain. (AR 358). Nurse Shepler again reviewed Plaintiff's case on January 30, 2014, and noted that her pain appeared to be in better control and there were no clear range of motion deficits on any joints. (AR 33). Nurse Shepler recommended approving Plaintiff's STD claim through February 17, 2014, but then obtaining additional medical evidence and a medical specialist review to assess functional impairment, as the clinical evidence did not support the prolonged duration of Plaintiff's disability. (*Id.*). Aetna notified Plaintiff of her STD benefits approval through February 17, 2014 in a letter dated January 30, 2014, and again informed her benefits would not be extended without updated supportive medical evidence. (AR 117-118).

On February 25 and 26, 2014, Dr. Garriga submitted statements to Aetna opining that Plaintiff remained unable to work through April 28, 2014, due to a lack of improvement in her symptoms of debilitating migraines, fatigue and joint pain. (Defendants' Facts, ¶ 20, citing AR 333, 343). At Aetna's request Dr. Garriga completed a capabilities and limitations worksheet on March 17, 2014, but declined to assign any restrictions or limitations, stating no formal testing had been done, and that Plaintiff would need a physical therapy appointment to accurately assess. (AR 331). Plaintiff's chiropractor Brian Dent then completed the same worksheet on April 11, 2014, opining that Plaintiff was limited to occasionally kneeling, lifting, pulling, pushing, reaching, carrying, bending, twisting, and grasping, and never climbing or crawling. (AR 327). Dr. Dent further opined that Plaintiff could frequently lift up to 5 pounds, occasionally lift up to 20 pounds, and occasionally sit, stand and walk. (*Id.*). Finally, Dr. Dent concluded that Plaintiff was capable of working 2-4 hours per day pending flareups. (*Id.*). Dr. Garriga completed

another Attending Physician Statement on April 16, 2014, indicating that Plaintiff's return to work date was extended to June 30, 2014. (AR 321-323).

On April 16, 2014, Aetna notified Plaintiff that the medical information submitted with her claim did not sufficiently document a level of impairment preventing her ability to work. (AR 123). Aetna explained that Plaintiff's claim would be pended while it requested the following additional clinical information from her health care provider(s): medical examination findings, test results, x-ray results, office notes, and observation of anatomical, physiological or psychological abnormalities. (*Id.*).

On April 24, 2014, Dr. Kia Swan-Moore, M.D., board certified in occupational medicine, reviewed Plaintiff's medical documentation. (AR 312-316). Dr. Swan-Moore noted that Plaintiff's treating providers were Dr. Garriga and Dr. Mahendra Gunapooti, a pain management specialist, but stated that despite multiple attempts she was unable to obtain records from Dr. Gunapooti. (AR 312, 313).[2] Dr. Swan-Moore spoke with Dr. Garriga on April 21, 2014, and recounted the conversation as follows:

> [Dr. Garriga] notes that from rheumatologic standpoint [Plaintiff] is a responder. Her CRP was 40 and after being on the Remicade it did decrease to 20. He would expect however that to be in complete remission this would decrease to the normal range of less than 5 and it has not. It is unclear why she is having more pain than when treatment started and he notes there are additional medications such as Actemra but at present it is only approved for use with RA (rheumatoid arthritis) and insurance won't cover it. He stated he would not add prednisone, potential burst might be indicated. He notes there is no physical clinical reason she cannot work however the claimant continues to tell him that the pain is so intense she could not concentrate. He cannot note any clinical dysfunction on exam or by history other than this statement. He notes on exam there are no clinical findings, no swollen joints etc.

(AR 314). Based on her review of the records and telephone consultation with Dr. Garriga, Dr. Swan-Moore concluded that functional impairment was supported for the timeframe from

---

2 Dr. Swan-Moore noted that had she been able to consult with Dr. Gunapooti, she would have asked whether Plaintiff had functional deficits, whether there was any cognitive abnormality she should be aware of, and whether there were any medication issues. (AR 315).

February 17, 2014, through May 30, 2014. (AR 315). Dr. Swan-Moore continued, however, as follows:

> There are no functional impairments documented in the physical exams. It does note pain but there is no evidence of functional loss. [Plaintiff] does have a diagnosis of inflammatory joint disease with lab elevation of C reactive protein (CRP). She is under treatment with an immunosuppressant but it seems to be incompletely controlling the inflammation. She does seem to have worsening pain since treatment began and this cannot be accounted for by clinical measures….
>
> The claimant complaints are all self-reported. The provider admits there are no clinical functional deficits noted on any examination. She does however continue to have an elevated CRP which is a clinical finding of continued systemic inflammation however there are no physical findings that correlate with this and this is an improvement with treatment.

(AR 315). Based on the foregoing, Dr. Swan-Moore concluded that the following restrictions and/or limitations would be supported: "Based on an 8 hour day, sitting, standing, and walking would be unlimited. [Plaintiff] could push, pull, and carry no more than 10 pounds at any time. There are no restrictions to emotional control, focus or concentration as well as cognition." (*Id.*).

On April 28, 2014, Aetna notified Plaintiff that her STD benefits would be terminated effective February 17, 2014, because she no longer met the Plan's definition of disability. (AR 124-126). Aetna explained as follows:

> In determining whether or not you are eligible for disability benefits, we first must determine the severity of your diagnosis, and assess how your functional ability is impacted as it relates to the functional requirements of your occupation. To do this, we have evaluated your subjective and objective medical information, to ascertain your most current status and disposition.
>
> Your claim was approved for the period of October 17, 2013, through February 17, 2014, a period of time found appropriate for treatment of your medical condition(s) and return to work. As of February of 2014, your condition appeared to have improved. Your medical exam by Dr. Francisco Garriga, MD, dated January 27, 2014, found reports of decreased pain, no swollen joints and improvement with remicade. There was discussion of carpal tunnel syndrome with + exam and diagnostic findings as well as headache and your ongoing treatment with pain management and a chiropractor. Your claim was extended to February 17, 2014, to allow receipt and review of additional records.

> You were contacted on February 4, 2014, to discuss your claim status and the need for information from your other providers. You advised Aetna Dr. Garriga has all the information related to your conditions but did provide information about your other treating providers to include Dr. Gunapooti, pain management; Dr. Brian Dent, Chiropractor and your neurologist Dr. S. Kahl. You also stated you had visited a cardiologist, but did not have the cardiologist[']s name and did not feel that was contributing to you[r] disabling medical condition.
>
> Records were requested from Dr. Gunapooti, pain management, on February 4, 2014 and March 17, 2014; with follow up calls on March 17, 2014 and April 1, 2014. Additionally, we requested any progress reports Dr. Gunapooti would have provided to Dr. Garriga through Dr. Garriga's office. To date, we have not received any records from Dr. Gunapooti.
>
> We received records and a capabilities and limitations worksheet from Dr. Dent on April 11, 2014.
>
> Your claim file including records from Dr. Garriga and Dr. Dent were submitted for physician review. In addition to reviewing the submitted clinical information, the reviewing physician spoke with Dr. Garriga on April 21, 2014. Dr. Garriga stated you had responded to treatment with remicade and your CRP decreased from 40 to 20. When asked what physical reasons there are to support an inability to work, Dr. Garriga could not report any but did recall that you stated your pain was intense and affected your concentration. Dr. Garriga could not note any clinical dysfunction on exam or by history, only your statement that [] your pain prevented you from concentrating. Dr. Garriga acknowledged there were no clinical findings which would support loss of functional capacity.
>
> Multiple attempts were made to reach Dr. Gunapooti for discussion by our reviewing physician. Dr. Gunapooti did not respond to requests for case discussion or for records.
>
> The reviewing physician determined that based on the clinical information on file and discussion with Dr. Garriga who had endorsed your disability, you would have functional limitations as follows: During an 8 hour work day, sitting standing and walking would be unlimited. You would be unable to push, pull and/or carry more than 10 pounds at any time. There are no restrictions to emotional control, focus, concentration or cognition.
>
> Based on the findings of this review, you do not meet the definition of disability beyond February 17, 2014, as you would be capable of performing your own sedentary occupation as a Business and Planning Analyst 5.

(AR 124-125).

On April 30, 2014, Nurse Shepler submitted medical records recently received from Dr. Gunapooti to Dr. Swan-Moore for an addendum review. (AR 266). Dr. Swan-Moore reached out to Dr. Gunapooti, but again was unable to establish contact.[3] (AR 267). Dr. Swan-Moore concluded as follows:

> Based on the additional documentation provided, the claimant's functional impairment from 2-17-14 through 5-30-14 are unchanged from previous peer report dated 4-14-14….Based on the review of the medical records and telephonic consultation: based on an 8 hour day, she could sit, stand and walk an unlimited amount. She could push, pull, and carry no more than 10 pounds at any time. There are no restrictions to emotional control, focus or concentration as well as cognition. There is no evidence any function has been adversely affected by medication….There is no indication for the claimant to be completely off work, she can work within the restrictions noted above. Her provider Dr. Garriga agreed with this as well. The claimant feels she cannot work because the pain is causing her to be unable to concentrate. I cannot assess whether pain would cognitively impair her, but there is currently no clinical evidence that she cannot do the activity noted above.

(AR 268). Aetna relied on Dr. Swan-Moore's analysis to affirm its denial of Plaintiff's claim for STD benefits in a letter dated May 15, 2014. (AR 127-128).

On or about July 8, 2014, Kevin Wilhite, MPT, completed a functional capacity evaluation ("FCE") on Plaintiff. (AR 247-263). The purpose of the FCE was to determine Plaintiff's overall ability level. (AR 247). Mr. Wilhite summarized his findings as follows:

> Lisa Jones demonstrated lifting performance that would place her in the Sedentary Physical Demand Category but ultimately Unable to Classify her ability of work over an 8 hour work day due to her inability to complete the aerobic capacity testing. Based upon her observed performance this date, including the 3 occasions where she requested to lie down to help control pain levels and the level of pain she was reporting, I would not expect her to tolerate any activity over 2 hours which was the observed time during this evaluation. Productive Sedentary work for an 8 hour work day would not be expected based upon this date's performance.
>
> Lisa Jones demonstrated the ability to occasionally lift up to 3 lbs. Floor to Waist, 5 lbs. Waist to Shoulder, push with 18.0 lbs. of force, and pull with 12.9 lbs. of

---

3 Dr. Swan-Moore noted that had she been able to consult with Dr. Gunapooti, she would have asked what Plaintiff functionally was capable of, what her long-term prognosis was, and what the reason was for her being completely off work. (AR 267).

> force. Lisa Jones demonstrated Occasional sitting, Occasional standing, Occasional walking, Occasional stair climbing, Occasional reaching at desk level, Occasional reaching floor level, Rarely balancing, Rarely stooping, Unable to kneel, Unable to crouch, Unable to crawl, Occasional object handling, Occasional fingering, Occasional simple hand grasping, Occasional firm hand grasping and Occasional fine/gross hand manipulation. An aerobic capacity test was not conducted due to safety concerns of using a treadmill with her gait performance and use of the cane.
>
> Deficits identified during testing include poor performance with manual muscle testing in bilateral UE's and LE's. Poor positional tolerance to sitting, standing and walking activity. Poor performance with lifting capacity affected by her balance and also impacted by her level of reported pain which causes her to self limit further activity.
>
> Lisa Jones demonstrated inconsistent performance with testing. Inconsistent performance was demonstrated during performance consistency testing with physiological responses (heart rate and respiratory rate), and movement and muscle recruitment patterns that were inconsistent when aware and unaware of observation. The capabilities outlined would be considered to be Lisa Jones's minimal functional ability level.

(*Id*). Nurse Shepler reviewed the FCE on July 14, 2014, and concluded as follows:

> The documentation fails to demonstrate findings that would support ongoing disability from a sedentary occupation. Although the clmt reported pain and requested to lie down 3 times during testing, the validity of the testing is questionable given the documentation of inconsistent performance. The documentation submitted fails to overturn the previous decision to terminate benefits. The clmt retains the right to appeal.

(AR 69). In a letter sent that same day, Nurse Shepler informed Plaintiff that the information contained in her FCE was insufficient to warrant a reversal of her disability claim decision, as the "result of the FCE was inconclusive in nature and failed to clearly demonstrate functional impairment." (AR 129).

On July 17, 2014, Plaintiff formally appealed the denial of her STD benefits. (AR 242). Plaintiff submitted additional information in support of her appeal on August 11, 2014. (AR 207-241). She listed the requirements of her job as follows: "filing, keyboarding, bending, standing, sitting, extensive exposure to fluorescent lighting and computer screen glare; travel between building/locations for meetings, transport of laptops + meeting materials/documents;

out-of-town travel includes carrying laptop + carryon, walking to/from concourse, transporting luggage." (AR 241). She maintained she was unable to perform the required duties of her position due to "ankylosing spondylitis, chronic pain disorder, fluctuating eye pressure, severe carpal tunnel syndrome, aggravated rheumatoid arthritis, and gaps in memory." (*Id.*).

On September 5, 2014, Dr. Daniel Gerstenblitt, M.D., board certified in internal medicine, preventative medicine, and occupational medicine, reviewed Plaintiff's medical documentation for the period of February 18, 2014, through April 16, 2014. (AR 200-204).[4] Dr. Gerstenblitt noted that he was unable to consult with Dr. Garriga despite numerous attempts. (AR 203).[5] After summarizing Plaintiff's submitted medical records, Dr. Gerstenblitt concluded as follows:

> This reviewer had a paucity of actual records during the timeframe, but [Plaintiff] appears to have chronic neck and back pain. She was getting epidurals. There may have been radicular symptoms but this reviewer had no MRIs documenting any surgical conditions being present. There were no EMGs confirming radiculopathy present either. The responses to the injections were only temporary at best. She has had chronic pain; whether it is her ankylosing spondylitis or from some lumbar or cervical degenerative condition. Her functional capacity evaluation was an invalid study and self-limited by the claimant. However, based on the available information, there is absolutely no reason that she is incapable of performing in at least a sedentary position. Restrictions that she certainly can do are lifting occasionally to ten pounds, sitting would be continuous, and reaching at desk level would be continuous, above shoulder and below waist would be occasional. There is no evidence she needs restriction from grasping or fine manipulation. Most other activities, such as balancing, stooping, kneeling, etc., also would be occasional. Walking and standing are at least occasional; I cannot comment whether she can do more based on the limited information in the records. Again, there is no real functional documentation in here other than her self-limiting on a Functional Capacity Evaluation, but the need for restrictions is

---

4 April 16, 2014, represented the end of the 26-week maximum STD benefit period under the Plan. (Plan 23).
5 Dr. Gerstenblitt noted that had he been able to consult with Dr. Garriga, he would have asked about Plaintiff's specific functional limitations, if any, about physical exam findings (since he had no office notes), about any MRIs, tests or blood work that would confirm the diagnosis of ankylosing spondylitis (as he did not see any positive blood work in the records), about any other conditions Plaintiff may have of which he was unaware, such as diabetes or heart disease, and about Plaintiff's hospitalization in October/November 2013 (as he was provided no documentation regarding that stay).

based on risk of harm, and there is no risk of harm in her working full-time in a sedentary type of occupation as these restrictions are consistent with.

(AR 203-204). Although Aetna forwarded Dr. Gerstenblitt's report to Dr. Garriga for review and comment, he did not provide any response. (AR 190-196).

In a letter dated October 8, 2014, Aetna informed Plaintiff that it was upholding the termination of her STD benefits as of February 18, 2014. (AR 139-140). Aetna stated that Plaintiff's appeal letter listed several additional diagnoses not present for the period of time under review. (*Id.*).

Plaintiff filed her original Complaint in the matter on February 23, 2015. (ECF No. 1). In her First Amended Complaint, filed August 11, 2015, Plaintiff claims that by wrongfully refusing to pay her benefits under the Plan, Defendants violated ERISA and the underlying provisions of the Plan. (ECF No. 29). As stated above, Defendants filed the instant Motion for Summary Judgment on January 13, 2016. (ECF No. 43).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material

fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## **DISCUSSION**

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. § 1132(a)(1)(B), *cert. denied*, 549 U.S. 887 (2006). "The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." *Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted).

In the instant case, Plaintiff does not dispute that the Plan granted Aetna the discretionary authority to determine eligibility for benefits and construe terms of the Plan. (Plan 22, 94, 95, 104).[6] The standard of review for this Court thus is abuse of discretion.

---

6 The Supreme Court has held that a plan administrator which both evaluates claims for benefits and pays benefit claims operates under a conflict of interest. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Such is not the case here, however, because as noted above Aetna possessed authority to make benefit determinations under the Plan, but STD benefits were funded solely by Boeing. (Plan 22, 27, 94, 95, 104). The fact that Aetna may partially have funded the benefits had Plaintiff's claim proceeded to one for long-term disability benefits does not alter the analysis.

> Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence. In considering the reasonableness of a plan administrator's fact-based disability determination, courts should consider whether the decision is supported by substantial evidence. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotation marks and citations omitted). In making its determination "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (internal quotation marks and citation omitted).[7] Finally, "[a] decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter de novo." *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). *See also Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted) ("The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.").

Upon consideration of the record before it, the Court cannot say that Aetna abused its discretion in denying Plaintiff STD benefits. As noted above, Aetna originally approved Plaintiff's claim for STD benefits through November 3, 2013, based on Dr. Garriga's treatment recommendation designed to stabilize Plaintiff's pain. (AR 13-14, 94). Aetna later extended the

---

7 In light of this standard, the Court will grant Defendants' Motion to Strike Evidence Outside of the Administrative Record, and will not consider Plaintiff's evidence of her social security disability determination.

benefit payments through February 17, 2014, based on Plaintiff's intervening hospitalization and Dr. Garriga's assessment that her condition was unchanged. (AR 99, 105, 117-118, 377, 384). At that point, however, Nurse Shepler recommended obtaining additional medical evidence and a medical specialist review to assess Plaintiff's functional impairment, because since her pain appeared to be in better control and there were no clear range of motion deficits on any joints, the clinical evidence did not support the prolonged duration of her disability. (AR 33).

Once Aetna received Plaintiff's updated medical documentation, it sent it to an independent, board certified occupational medicine specialist for review. Dr. Swan-Moore contacted Dr. Garriga, who indicated that Plaintiff's CRP had decreased with treatment, and it was unclear why she was having more pain than when treatment started. (AR 314).[8] He further noted there was no physical clinical reason that Plaintiff could not work, including no swollen joints. (*Id.*). Dr. Swan-Moore incorporated both this assessment and her own detailed evaluation of the medical evidence into her report, and concluded that based on an 8 hour day Plaintiff's sitting, standing, and walking would be unlimited. (AR 315). According to Dr. Swan-Moore, Plaintiff's only limitations would pushing, pulling, and carrying no more than 10 pounds at any time, restrictions that were consistent with her sedentary position. Aetna terminated Plaintiff's STD benefits based on this assessment, a decision that was not unreasonable under the Plan's definition of disability. (AR 124-125; Plan 100).

With respect to Plaintiff's appeal, at that time Aetna forwarded Plaintiff's records, including the FCE completed by Kevin Wilhite, MPT, to Daniel Gerstenblitt, a medical doctor board certified in internal medicine, preventative medicine, and occupational medicine. After unsuccessfully attempting to consult with Dr. Garriga, Dr. Gerstenblitt summarized Plaintiff's medical records, concluding there was a paucity of records from the relevant timeframe. (AR

---

8 As noted above, Dr. Swan-Moore was unable to establish contact with Plaintiff's pain management physician, Dr. Gunapooti.

203-04). He discounted the findings of the FCE, noting it was "an invalid study and self-limited by the claimant." (*Id.*). Dr. Gerstenblitt then concluded that "based on the available information, there is absolutely no reason that [Plaintiff] is incapable of performing in at least a sedentary position." (*Id.*). After receiving no response to Dr. Gerstenblitt's report from Dr. Garriga, Aetna informed Plaintiff that it was upholding the termination of her STD benefits as of February 18, 2014. (AR 139).

"When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) (citation omitted). Here, both of the physicians reviewing Plaintiff's file concluded that she was not so disabled as to require STD benefits. They did so after noting there was little or no objective evidence of impairment, leaving only Plaintiff's subjective, uncorroborated complaints as evidence of her ailments.[9] *See Id.*, citing *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) (holding that providing only subjective medical opinions, which were unsupported by objective medical evidence, did not suffice to prove a claim for benefits); *see also Prezioso v. Prudential Ins. Co. of America*, 748 F.3d 797, 806 (8th Cir. 2014) (same). Under these circumstances, the Court finds Aetna's decision to deny Plaintiff benefits was not an abuse of discretion, and thus even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." *Fletcher-Merrit*, 250 F.3d at 1180. *See also Midgett*, 561 F.3d at 897-98 (holding the decision to deny the plaintiff's short-term disability claim was supported by substantial evidence, as the peer reviews "accurately represent[ed] [Plaintiff's] medical record and adequately address[ed] the evidence

---

9 As noted by Dr. Gerstenblitt, even these complaints were suspect, as according to Mr. Wilhite Plaintiff demonstrated inconsistent performance with testing, depending on whether she was aware or unaware of observation. (AR 247).

supporting her claim for disability," but "explained that these findings did not demonstrate that [Plaintiff] was unable to perform her job duties."); *Rittenhouse*, 476 F.3d at 632 (internal quotation marks and citation omitted) ("[The Plan's] decision is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Defendants' Motion for Summary Judgment must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Evidence Outside of the Administrative Record (ECF No. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 43) is **GRANTED**, and Plaintiff's First Amended Complaint is **DISMISSED** with prejudice. An appropriate Order of Dismissal will accompany this Memorandum and Order.

Dated this 7th Day of March, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE